UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

CASE NO.:

JORGE CONTRERAS,

      Plaintiff,

v.

CORPORATE COACHES, INC.,
a Florida Profit Corporation and
LAURIE BARDER, individually

      Defendants.

_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, JORGE CONTRERAS("Plaintiff"), by and through his undersigned counsel, files this Complaint against Defendants, CORPORATE COACHES, INC. ("CC") and LAURIE BARDAR, individually ("BARDAR") (collectively "Defendants" or Defendant) and states as follows:

## JURISDICTION

1.      Jurisdiction in this Court is proper as the claims are brought pursuant to the Fair Labor Standards Act, as amended (29 U.S.C. §201, et seq., hereinafter called the "FLSA") to recover unpaid back wages, an additional equal amount as liquidated damages, obtain declaratory relief, and reasonable attorney's fees and costs.

2.      The jurisdiction of the Court over this controversy is based upon 29 U.S.C. §216(b).

3.      This Court has the authority to grant declaratory relief pursuant to the FLSA and the Federal Declaratory Judgment Act ("DJA"), 28 U.S.C. §§ 2201-02.

## **PARTIES**

4.      At all times material hereto, Plaintiff was a driver for Defendants, and a resident of Broward County, Florida.

5.      At all times material hereto, CC was and continues to be a Florida Profit Corporation.  Further, at all times material hereto, CC was and continues to be engaged in the transportation business in Florida, with its principal place of business in Broward County, Florida.

6.      Defendant, LARDAR, during the last three (3) years owned and operated CC and regularly engaged in, among others, the following activities: (a) classifying CC drivers as "independent contractors,"; (b) determining the rates of pay to be given to CC drivers; (c) hiring and firing CC drivers; (d) determining the course and scope of work of CC drivers; (e) determining the hours worked and the schedule to be worked by drivers working for CC and (f) controlled  the finances and operations of CC.

7.      In light of the following duties performed by LARDAR in Paragraph 6, above, LARDAR is defined as an "employer" under the FLSA and is jointly and severally liable to Plaintiff should he prevail in this action.

8.      At all times material hereto, Plaintiff was "engaged in commerce" within the meaning of §6 and §7 of the FLSA during his relationship with Defendants, but not within the meaning of the Motor Carrier Act.

9.      At all times material hereto, Plaintiff was an "employee" of Defendants within the meaning of FLSA.  This is true, regardless of the fact that Defendants misclassified Plaintiff, as an "independent contractor" despite the fact that, among other things: (a) Defendants provided

2

Plaintiff with the vehicles and customers to perform their driving jobs; (b) Defendants unilaterally determined the rate of pay that Plaintiff was to be paid; and (c) Defendants controlled the method and manner in which Plaintiff performed his duties and represented Defendants while driving. By virtue of these facts, and the application of the "economic realities test" applied under the FLSA, Plaintiff, is truly considered an employee under the FLSA.

10. At all times material hereto, Defendants were the "employers" within the meaning of FLSA.

11. Defendants were and continues to be, an "employer" within the meaning of FLSA.

12. At all times material hereto, CC was and continues to be "an enterprise engaged in commerce," within the meaning of FLSA.

13. Specifically, CC had two (2) or more employees handling, servicing, or otherwise working for clients outside the State of Florida. Specifically, as part of Plaintiff's duties, he transported clients in Defendants' vehicles who were from out of state, who were staying at local hotels as tourists. Defendants' records, provided to Plaintiff, reveal the customers' billing information and location, which demonstrates that many of Defendants' customers were outside the State of Florida.

14. At all times material hereto, Defendants accepted and processed payments from its customers and others, which were drawn on out-of-state bank accounts. Specifically, as part of Plaintiff's duties, he transported clients in Defendants' vehicles who were from out of state, who were staying at local hotels as tourists. Defendants' records, provided to Plaintiff, reveal the customers' billing information and location, which demonstrates that many of Defendants'

customers were outside the State of Florida.

15.     Based upon information and belief, the annual gross revenue of Defendants was in excess of $500,000.00 per annum during the relevant time periods.

16.     At all times hereto, Plaintiff was "engaged in commerce" and subject to individual coverage of the FLSA, because, as drivers, Plaintiff was engaged in the transportation of Defendants' customers on intrastate trips throughout the State of Florida.

17.     At all times material hereto, the work performed by the Plaintiff was directly essential to the business performed by Defendants in that, without drivers such as Plaintiff, Defendants could not operate their limousine/transportation business.

## STATEMENT OF FACTS

18.     In March 2017, Defendants hired Plaintiff to work as driver on Defendants' behalf.

19.     During the relevant limitations period, Plaintiff, worked for Defendants as a driver, who Defendants misclassified as an "independent contractor."

20.     Defendants required Plaintiff to sign an "Independent Contractor" agreement, as a prerequisite to his hiring, which controlled and dictated all aspects of Plaintiff's employment, including his compensation.

21.     Additionally, Plaintiff was also required to adhere to Defendants' policies and procedures, undergo training, attend meetings, wear uniforms and certain attire, all provided by Defendants.

22.     At all times during Plaintiff's employment with Defendants, Plaintiff only drove Defendants' vehicles for Defendants' clients.  Defendants supplied and paid for these vehicles, as well as insurance, fuel, permits and registration associated with these vehicles.

4

23.     Plaintiff regularly worked for Defendants more than forty (40) hours within a work week. Specifically, while the number of hours could vary per workweek.  Defendants failed to keep time records of Plaintiff's actual hours worked, but such hours can possibly be recreated through review of Defendants' trip tickets, dispatch records, and other materials in Defendants' possession detailing the dates, times, customers transported, and routes driven by Plaintiff.  Plaintiff, did not work a set schedule but rather, drive Defendants' vehicles, based on the demand of Defendants' customers.

24.     From at least March 2017, through March 2020, Defendants failed to compensate Plaintiff at a rate of one and one-half times Plaintiff's regular rate for all hours worked in excess of forty (40) hours in a single work week.

25.     Plaintiff was paid an hourly rate for each driving assignment for Defendants, yet Defendants invoiced/billed their clients an additional 20% gratuity for each, and every job Plaintiff was assigned and kept the additional gratuity for the company.

26.     As non-exempt driver misclassified as an "independent contractor" by Defendants, Plaintiff, should be compensated at the rate of one and one-half times his regular rate for those hours that Plaintiff worked in excess of forty (40) hours per week, as required by the FLSA.

27.     Defendants violated Title 29 U.S.C. §§ 206 and 207 during the last three (3) years in that:

    a.  Plaintiff regularly worked more than forty (40) hours per week during his employment with Defendants.

    b.  No payments or provisions for payment have been made by Defendants to properly

5

compensate Plaintiff, at the statutory rate of one and one-half times his regular rate for those hours worked in excess of forty (40) hours per work week, as provided by the FLSA; and

    c.   Defendants failed to maintain proper time records as mandated by the FLSA.

28.    Plaintiff has retained the law firm of RICHARD CELLER LEGAL, P.A. to represent him in the litigation and has agreed to pay the firm a reasonable fee for its services.

## STATEMENT OF CLAIM

29.    Plaintiff re-alleges and reavers paragraphs 1 through 27 of the Complaint, as if fully set forth herein.

30.    Plaintiff was a driver for Defendants.  Plaintiff was misclassified an "Independent Contractor" and as a result, Defendants failed to properly compensate Plaintiff, at the statutory rate of one and one-half times his regular rate for those hours worked more than forty (40) hours per work week, as provided by the FLSA.

31.    Plaintiff was employed by Defendants from March 2017 through March 2020[1] as a driver.  Plaintiff estimated he averaged approximately sixty (60) hours per workweek, but was never paid for any hours over forty (40).

32.    Therefore, Plaintiff estimates his damages to be $48, 701.40(unliquidated) $97,

---

[1] Due to Covid-19, Plaintiff was laid off beginning in March 2020 and based on Defendants' misclassification of Plaintiff, he was unable to apply and receive benefits as an employee.  During this lay-off period, Defendants were investigated by the Department of Labor and were required to exchange the names and contact information for all "drivers" with the DOL investigator.  In October 2020, Defendants required all drivers that planned on returning to work for Defendants to meet with them to discuss their future employment.  During the meeting, Defendants began interrogating Plaintiff about the DOL investigation. Plaintiff was uncomfortable with the questioning and once the meeting ended, Defendants' terminated Plaintiff's employment.

402.80(liquidated).  *See* calculation attached as **<u>Exhibit A.</u>**

33.     Additionally, Plaintiff seeks reimbursement for tax liability paid out by Plaintiff as a result of Defendants misclassification as well as any additional damages Plaintiff suffered.

34.     Plaintiff is estimating the value of his damages at this time, however, upon receipt of all records in Defendant's possession regarding Plaintiff's pay and time records, Plaintiff will amend/supplement his Statement of Claim.

35.     Plaintiff is also seeking any reimbursement of fees and costs, as required under the FLSA, should Plaintiff prevail.

**COUNT I**
**<u>VIOLATION OF 29 U.S.C. §207 OVERTIME COMPENSATION</u>**

36.     Plaintiff re-alleges and reavers paragraphs 1 through 34 of the Complaint, as if fully set forth herein.

37.     During his employment, Plaintiff worked in excess of the forty (40) hours per week for which he was not compensated at the statutory rate of one and one-half times his regular rate of pay.

38.     Plaintiff was and is entitled to be paid at the statutory rate of one and one-half times his regular rate of pay for those hours worked more than forty (40) hours.

39.     At all times material hereto, Defendants failed to fail to maintain proper time records as mandated by the FLSA.

40.     Defendants' actions were willful and/or showed reckless disregard for the provisions of the FLSA, as evidenced by their failure to compensate Plaintiff at a rate of one and one-half times his regular rate of pay for the hours worked in excess of forty (40) hours per

workweek when they knew, or should have known, such was, and is due.

41.     Specifically, Defendants have been sued by other limousine/transportation drivers like Plaintiff on at least three (3) occasions in the past few years alleging a similar misclassification as "independent contractors" and failure to pay overtime.  Notwithstanding, Defendants have refused to modify and/or alter their illegal pay practices.

42.     Additionally, the Department of Labor has investigated Defendants' misclassification of drivers as "independent contractors" and failure to pay overtime.  Therefore, a three (3) year three-year statute of limitations period is appropriate.

43.     Defendants failed to properly disclose or apprise Plaintiff of his rights under the FLSA.

44.     Due to the intentional, willful, and unlawful acts of Defendants, Plaintiff suffered and continues to suffer damages and lost compensation for time worked over forty (40) hours per week, plus liquidated damages.

45.     Plaintiff is entitled to an award of reasonable attorney's fees and costs pursuant to 29 U.S.C. §216(b).

## COUNT II
## DECLARATORY RELIEF

46.     Plaintiff adopts all allegations in paragraphs 1 through 32.

47.     Plaintiff and Defendants have a Fair Labor Standards Act dispute pending, which the Court has jurisdiction to hear pursuant to 28 U.S.C. § 1331, as a federal question exists.

48.     The Court, also, has jurisdiction to hear Plaintiff's request for declaratory relief pursuant to the Declaratory Judgment Act.  28 U.S.C. §§ 2201-2202.

49.     Plaintiff may obtain declaratory relief.

50.     Defendants employed Plaintiff.

51.     Defendants. CC is an enterprise, subject to the coverage of the FLSA in 2017-2020.

52.     Plaintiff was individually covered by the FLSA.

53.     Defendants failed to pay Plaintiff for all hours worked.

54.     Defendants did not keep accurate time records pursuant to 29 U.S.C. § 211(c) and 29 C.F.R. Part 516.

55.     Defendants failed to take affirmative steps to support a good faith defense.

56.     Plaintiff is entitled to liquidated damages.

57.     It is in the public interest to have these declarations of rights recorded.

58.     Plaintiff's declaratory judgment action serves the useful purpose of clarifying and settling the legal relations in issue.

59.     The declaratory judgment action terminates and affords relief from uncertainty, insecurity, and controversy giving rise to the proceeding.

60.     Plaintiff demands trial by jury.

WHEREFORE, Plaintiff respectfully requests that judgment be entered in his favor against Defendants:

a.      Declaring, pursuant to 29 U.S.C. §§2201 and 2202, that the acts and practices complained of herein are in violation of the maximum hour provisions of the FLSA;

b.      Awarding Plaintiff, the declaratory relief sought herein;

9

c.      Awarding Plaintiff overtime compensation in the amount due to him for
Plaintiff's time worked in excess of forty (40) hours per workweek;

d.      Awarding Plaintiff liquidated damages in an amount equal to the overtime
award;

e.      Awarding Plaintiff reasonable attorney's fees and costs and expenses of the
litigation pursuant to 29 U.S.C. §216(b);

f.      Awarding Plaintiff pre-judgment interest;

g.      Ordering any other further relief the Court deems just and proper.

## COUNT III
## UNLAWFUL RETALIATION IN VIOLATION OF 29 U.S.C. § 215(a)(3)

61.      Plaintiff reincorporates and re-alleges Paragraphs 1 through 59, above, as though
set forth fully herein, and further alleges as follows:

62.      Defendants were involved in a Department of Labor ("DOL") investigation on or
around September 2020 for wage violations by initiated by a former employee of Defendants.

63.      Plaintiff's contact information was given to the DOL by Defendants for this
investigation.

64.      On or around, October 11, 2020, while on furlough due to COVID-19, Plaintiff
was contacted and scheduled to meet with Defendants to discuss coming back to work.

65.      Upon arriving, Plaintiff was questioned about the DOL investigation, as well as
whether Plaintiff would be participating in the investigation.

66.      Plaintiff objected to Defendants' questions and interrogation and ended the
meeting.

10

67.     Plaintiff, to date, was never called back to work as promised by Defendants.

68.     Defendants illegally terminated Plaintiff from his employment in violation of 29 U.S.C. § 215(a)(3).

69.     Plaintiff was terminated for no other reason than his objections to Defendants' interrogation regarding their illegal pay practices.

70.     As a result of Defendant's intentional, willful, and unlawful actions, Plaintiff has suffered damages, including but not limited to lost wages, lost benefits, lost employment status, as well as humiliation, pain and suffering, and other monetary and non-monetary losses.

71.     The retaliatory firing provision of the FLSA states that "it shall be unlawful for any person ... to discharge or in any other manner discriminate against an employee because such employee has filed any complaint ... under or related to this [Act]."  29 U.S.C. § 215(a)(3). In *EEOC v. White and Son Enterprises*, 881 F.2d 1006, 1011 (11th Cir. 1989), the Court held that "Congress sought to secure compliance with the substantive provisions of the labor statute by having 'employees seeking to vindicate rights claimed to have been denied,' and lodge complaints or supply information to officials regarding allegedly substandard employment practices and conditions.  The anti-retaliation provision of the FLSA was designed to prevent fear of economic retaliation by an employer against an employee who chose to voice such a grievance." (citing to *Mitchell v. Robert DeMario Jewelry, Inc.*, 361 U.S. 288, 292 (1960)).

## **JURY DEMAND**

Plaintiff demands trial by jury on all issues so triable as a matter of right by jury.

Dated this 15th day of October 2021.

                                                       Respectfully submitted,


                                                      ***/s/ Noah E. Storch***___
                                                      Noah E. Storch, Esq.
                                                      Florida Bar No.: 0085476
    RICHARD CELLER LEGAL, P.A.
    10368 W. State Road 84, Suite 103
    Davie, FL 33324
    Telephone: (866) 344-9243
    Facsimile: (954) 337-2771
    E-mail: noah@floridaovertimelawyer.com

    *Counsel for Plaintiff*

# EXHIBIT A

## "EXHIBIT A"

## Plaintiff's Statement of Claim

March 2017-December 31, 2017-(41 weeks)

**Plaintiff's 1099-$20,153.00**

**$20,153.00/41 weeks=$491.54 per week**

**$491.54/60 hours=$8.19 per hour x 1.5=$12.28 per hour(overtime rate)**

**$12.28(overtime rate) x 20 hours of overtime=$245.60 owed per week**

**$245.60 x 41 weeks=$10, 069.60(unliquidated) $20, 139.20(liquidated)**

January 1, 2018-December 31, 2018(52 weeks)

**Plaintiff's 1099-$34,934.00**

**$34, 934.00/52 weeks=$671.81 per week**

**$671.81/60 hours=$11.20 per hour x 1.5=$16.80 per hour(overtime rate)**

**$16.80(overtime rate) x 20 hours of overtime =$336.00 owed per week**

**$336.00 x 52 weeks=$17, 472.00(unliquidated) $34, 944.00(liquidated)**

January 1, 2019-December 31, 2019(52 weeks)

**Plaintiff's 1099-$33,323.39**

**$33,323.39/52 weeks=$640.83 per week**

**$640.83/60 hours=$10.68 per hour x 1.5=$16.02 per hour(overtime rate)**

**$16.02(overtime rate) x 20 hours of overtime =$320.40 owed per week**

**$320.40 x 52 weeks=$16, 660.80(unliquidated) $33,321.60(liquidated)**

January 1, 2020-March 17, 2020 (11 weeks)

**Plaintiff's 1099-$8,993.00**

**$8,993.00/11 weeks=$817.54 per week**

**$817.54/60 hours=$13.63 per hour x 1.5=$20.45 per hour (overtime rate)**

**$20.45(overtime rate) x 20 hours of overtime =$409.00 owed per week**

**$409.00 x 11 weeks=$4, 499.00(unliquidated) $8, 998.00(liquidated)**

**TOTAL OVERTIME OWED(ESTIMATE)**

**$48, 701.40(UNLIQUIDATED) $97, 402.80(LIQUIDATED)**